UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

ANTHONY LUCIOTTI, et al.,      Civil Action No. 20-3539

        Plaintiff,

                             **OPINION**

    v.

THE BOROUGH OF HADDONFIELD
NEW JERSEY, et al.,

        Defendants.

_____

**APPEARANCES:**

PATRICK HOWARD
SALTS, MONGELUZZI, & BENDESKY, P.C.
1650 MARKET STREET, 52ND FLOOR
PHILADELPHIA, PA 19103
    *Counsel for Plaintiffs*

CHRISTOPHER R. GIBSON
ARCHER & GREINER
ONE CENTENNIAL SQUARE
HADDONFIELD, NJ 08033

    *Counsel for Defendant Port Authority Transit Corporation*

FRANCIS X. DONNELLY
MAYFIELD, TURNER, OMARA,
DONNELLY & MCBRIDE, PC
2201 ROUTE 38
SUITE 300
CHERRY HILL, NJ 08002

    *Counsel for Defendant the Borough of Haddonfield*

**HILLMAN**, District Judge

    Plaintiffs have brought suit against Defendants the Borough

of Haddonfield ("Defendant Haddonfield") and Port Authority

Transit Corporation ("PATCO") (collectively the "Defendants"),

1

alleging that the Defendant Haddonfield's conduct resulted in a *de facto* taking and inverse condemnation of Plaintiffs' properties without just compensation in violation of the takings clause of the Fifth Amendment.  In addition, Plaintiffs allege the Defendants' conduct (1) constituted a nuisance; (2) was negligent; and (3) constituted a trespass to land.  This matter comes before the Court on PATCO's motion to dismiss.  (ECF No. 17).  For the reasons stated below, the Motion will be denied.[1]

## BACKGROUND

The Court takes its brief recitation of the facts from Plaintiffs' First Amended Complaint ("FAC").  (ECF No. 1 ("FAC").  Defendant Haddonfield has an easement between the Plaintiffs' homes, which allows the Defendants to access the property that abuts the Plaintiffs' backyards.  (FAC ¶3).  At some point prior to 2006, the Defendants constructed a drainage swale and a drainage piping system that runs under the PATCO train tracks as part of Haddonfield's storm water management system.  (FAC ¶3).  Since 2006, Plaintiffs have notified Defendant Haddonfield that the swale was "blocked, un-kept, inadequate or otherwise a risk to Plaintiffs' property."  (FAC

---

[1] On May 22, 2020, PATCO filed a Motion to Dismiss Plaintiffs' Complaint, ECF No. 1.  (ECF No. 11).  Thereafter, Plaintiffs' filed an Amended Complaint, which mooted PATCO's first Motion to Dismiss, ECF No. 11.  (ECF No. 16).  Accordingly, this Court will deny as moot PATCO's first Motion to Dismiss.  (ECF No. 11).

¶6).  The drainage swale was removed in August 2014 and replaced "with concrete pipes and inlets to connect two underground pipe crossings, grading of the adjacent area to provide proper overland drainage." (FAC ¶7).  Even after the replacement, from 2015-2018, the drainage inlets could not withstand the amount of water directed towards them during heavy rainfalls.  (FAC ¶8).  Plaintiffs warned Defendant Haddonfield that it needed to "clean, maintain, and/or repair the system to improve draining and reduce pooling water." (FAC ¶9).  Defendants failed to take "any material steps to prevent the drastic flooding that occurred on June 20, 2019" and as a result Plaintiffs allege the Defendants' inactions "destroyed, damaged, and/or devalued Plaintiffs' property rendering them worthless." (FAC ¶10).  Plaintiffs allege, among other things, that Defendants were negligent, caused a trespass to land, and constituted a nuisance.

PATCO filed the present Motion to Dismiss on June 6, 2020. (ECF No. 17).  The Motion to Dismiss has been fully briefed. Therefore, the motion is ripe for adjudication.

<u>**DISCUSSION**</u>

**A.   Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over this case because it presents a federal question under the Fifth Amendment of the United States Constitution.  <u>See</u> 28 U.S.C. § 1331

**B.   Motion to Dismiss Standard**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  In considering a motion under Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the pleader.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005); see also Philips v. Cty. Of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) ("[I]n deciding a motion under Fed. R. Civ. P. 12(b)(6), [a district court is] . . . required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to" the plaintiff).  A pleading is sufficient if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

When weighing a motion to dismiss, the Court does not ask "whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions.'") (citations omitted).

4

In applying the <u>Twombly</u>/<u>Iqbal</u> standard, a district court will first "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusion." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing <u>Iqbal</u>, 556 U.S. at 678).   Next, the Court will "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" <u>Id.</u> at 211 (citing <u>Iqbal</u>, 556 U.S. at 679).

To meet this standard, a "complaint must do more than allege the plaintiff's entitlement to relief." <u>Id.</u>; <u>see also</u> <u>Philips</u>, 515 F.3d at 234 ("The Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citing <u>Twombly</u>, 550 U.S at 556).   The party moving to dismiss under 12(b)(6) "bears the burden of showing that no claim has been presented." <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005).

C. **Analysis**

a. **Sovereign Immunity v. Common Law Discretionary**

Plaintiffs first argue PATCO's arguments for dismissal fail

because PATCO has no common law immunities.  In support of this
argument, Plaintiffs directs this court's attention to N.J.S.A.
32:3-5(b), which conferred upon the Delaware River Port
Authority, and by extension PATCO, the power "to sue and be
sued."  N.J.S.A. 32:3-5(b).  As a result of this provision,
the New Jersey Supreme Court has held "if [PATCO has] authority
to institute common law suits against others derived from the
power to sue, then logically the power to be sued infers the
corollary proposition: a plaintiff can sue [PATCO] to enforce a
common law claim."  <u>Ballinger v. Delaware River Port Authority</u>,
172 N.J. 586, 596 (2002).  Because of this case law, Plaintiffs
argue PATCO "does not enjoy *any* immunity as a governmental
entity for Plaintiffs' common law claims."  <u>See</u> (ECF No. 23
("Pls. Br.") at 10).  In response, PATCO contends Plaintiffs are
mistakenly equating sovereign immunity, which PATCO is not
invoking, with the common law immunity for discretionary
decisions.  <u>See</u> (ECF No. 26 ("Def. Reply Br.") at 4-9).  This
Court agrees with PATCO.

A judge of this Court has previously held "[i]t is well
settled that, absent a clear waiver by a state of its sovereign
immunity under the Eleventh Amendment or a congressional
abrogation of that immunity, a federal court lacks jurisdiction
to hear claims brought by an individual against a state."
<u>Jordan v. New Jersey Dept. of Corrections</u>, 881 F. Supp. 947, 951

6

(D.N.J. 1995) (citing <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984)).  The New Jersey Supreme Court has previously recognized this immunity vastly differs from the discretionary decision immunity, which derives from the separation of powers doctrine.  In <u>Hoy v. Capell</u>, the Court explained:

> To accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations and to place in inexpert hands what the Legislature has seen fit to entrust to experts. Acceptance of this conclusion, far from effecting revival of the ancient shibboleth that 'the king can do no wrong', serves only to give expression to the important and continuing need to preserve the pattern of distribution of governmental functions prescribed by constitution and statute.

48 N.J. 81, 89-90 (1966).  The Court then summarized that the community "defense which we here sustain rests not on any anachronistic concept of sovereignty, but rather on a regard for sound principles of government administration and a respect for the expert judgment of agencies authorized by law to exercise such judgment."  <u>Id.</u> at 90; <u>see also</u> <u>Visidor Corp. v. Borough of Cliffside Park</u>, 48 N.J. 214, 218-21 (1966)(recognizing that regardless of waiver of sovereign immunity, "certain types of governmental activity must remain free from any resulting damage

7

claims because they are properly viewed as nontortious or are otherwise deemed immune for controlling policy reasons").

The distinction between sovereign immunity and the common law discretionary decision immunity is further demonstrated by Lieberman v. Port Authority of New York & New Jersey. 132 N.J. 76 (1993). In Lieberman, the Court concluded there was a waiver of sovereign immunity; however, the Court still found that the Port Authority of New York and New Jersey ("Port Authority") was entitled to invoke the common law discretionary decision immunity. More specifically, the Court explained:

> plaintiff also cannot hold defendant liable for its failure to provide adequate police protection. The consent statute merely eliminated the defense of sovereign immunity. Therefore, because no liability existed at common law for failure to provide police protection for governmental entities, we will not impose such liability now.

Id. at 86. The Court further explained "[a]lthough the Port Authority is not within the purview of New Jersey's Tort Claims Act, which immunizes municipalities from claims alleging inadequate police protection, N.J.S.A. § 59:5-4, the common law traditionally provided immunity." The Court ultimately concluded that despite the waiver of sovereign immunity, Port Authority could invoke the common law immunity to the extent that the Port Authority was engaged in a governmental function rather than a commercial function. Id. at 91-93.

To distinguish themselves from this case, Plaintiffs allege "the Supreme Court actually held that there was no common law claim for failure to provide police protection and, therefore, refused to impose liability against the governmental entity under such a theory." (Pls. Br. at 12).  The Plaintiffs misunderstand the Court's meaning when it explained "no liability existed at common law for failure to provide police protection."  As PATCO notes, although referred to as an immunity, the common law discretionary decision immunity is actually an absence of liability.  This is demonstrated by the Court in <u>Lieberman</u>, which held

> The barrier [to liability] is not a technical doctrine of governmental immunity from suit, but rather the absence of a substantive basis for imposing liability. This is so because ultimately plaintiffs challenge administrative or legislative decisions of a discretionary character, and it would be intolerable to burden those decisions with a dollar liability whenever a trier of the facts disagrees with them.

<u>Lieberman</u>, 132 N.J. at 84.  Accordingly, this Court finds that just because PATCO has waived sovereign immunity does not necessarily mean it may not invoke the common law discretionary decision immunity.

### b. Decisions Regarding the Design and Upgrading of the Public Works

PATCO argues the common law discretionary decision immunity bars Plaintiff's common law claims to the extent they are based

9

upon a contention that the design of the Drainage Inlet and/or the connected drainage pipes is inadequate because it is well settled such decisions are not subject to judicial review or tort claims. (See (ECF No. 17-1 ("Def. Br.") at 15-17). Plaintiffs respond that the immunity does not apply because PATCO fails to demonstrate the original design of the Drainage Swale adhered to government plans and specifications. (Pls. Br. at 15). PATCO responds that Plaintiffs are "improperly trying to impose Tort Claims Act requirements on PATCO, despite that the Tort Claims Act is inapplicable to PATCO." (Def. Reply Br. at 13-14).

The New Jersey Tort Claims Act is not applicable to the Delaware River Port Authority, and by extension PATCO, because bi-state entities are not "public entities" within the meaning of the Tort Claims Act. Bell v. Bell, 83 N.J. 417, 425 (1980). However, the New Jersey Supreme Court has explained that the "purpose of the Tort Claims Act was to establish immunities for municipalities; it was not designed to create liability. Consequently, if an immunity was in existence prior to the Tort Claims Act, it remains available to a municipality under the Tort Claims Act." Russo Farms v. Vineland Bd. of Educ., 144 N.J. 84, 110 (1996). In Russo Farms, the Court further noted that in Barney's, a pre-Torts Claim Act, the Court granted immunity to the City for its failure to update the sewer system

10

because the decision to construct the system was 'grounded in governmental judgment and discretion.'" Id. at 469.  The court then compared the pre-Tort Claims Barney's case and held that "[s]imilarly, the Tort Claims Act's plan or design immunity is granted because such decisions are 'an example of the type of highly discretionary governmental activity which the courts have recognized should not be subject to the threat of tort liability.'" Id. at 111.  The Court concluded "that the new Torts Claim Act seems intended to codify exiting case law." Id. Following this the Court held, that "under Barney's, as well as under the Tort Claims Act, the City may establish plan or design immunity for its original construction of the drainage system. Once it does, 'no subsequent event or change of condition shall render a public entity liable on the theory that the existing plan or design of public property constitutes a dangerous condition.'" Id. (quoting N.J.S.A. 59:4-6).

This Court is persuaded that through the Court's cite to N.J.S.A. 59:4-6 following the application of either the Barney's (pre-Torts Claims Act) and the Torts Claim Act and the Court's previous discussion of the purpose of the New Jersey Torts Claim Act was to codify common law, that the New Jersey Supreme Court would require a defendant seeking the application of the common law immunity to still demonstrate that the original construction was based on an approved plan or specification.  Accordingly,

11

even though PATCO directs this Court's attention to earlier
dated New Jersey case law that did not mention a requirement of
the defendant's design being approved plans or specifications,
this Court focuses on the more recent New Jersey case law, which
seems to suggest a defendant, under the common-law, must
demonstrate the initial design was approved in advance of
construction or improvement.  As the Court noted in <u>Russo</u>, this
is consistent with the Court's holding in <u>Barney's</u> that the
"decision to construct the system was 'grounded in governmental
judgment and discretion.'"  <u>Id.</u> at 111 (citing <u>Barney's</u>, 62 N.J.
at 469)).

Here, based on the limited record before this Court, the
Court cannot conclude that PATCO is entitled to the common law
discretionary decision immunity at this time regarding its
initial design of the public works as it is not clear it
conformed to an approved plan or specification.

Moreover, PATCO asks this Court to dismiss Plaintiff's
common law claims to the extent they are based upon the failure
to upgrade the public works.  In support of this argument, PATCO
directs this Court's attention to the previously mentioned
<u>Barney's</u> decision and argues this case stands for the
proposition that "a governmental entity cannot be compelled to
upgrade a storm sewer system, or pay damages arising from a
failure to do so, where the system has become inadequate over

12

time." (Def. Br. at 15).  At this time, on this limited record, the Court cannot conclude that the system has only become inadequate over time based on the amount of urban development in the area and increased demands made upon the sewer as was the case in <u>Barney's</u>.  <u>Barney's Furniture Warehouse, Inc.</u>, 62 N.J. at 469.  Accordingly PATCO's motion to dismiss Plaintiff's common law claims to the extent they are based on the design or failure to upgrade the public works system will be denied.

### c. Decisions Regarding Maintenance of the Public Works

PATCO argues the common law discretionary decision immunity bars Plaintiff's common claims to the extent they are based on the maintenance of the public works.  In support of this argument, PATCO relies on case law regarding the maintenance and repair of roads as well as clearing roads following a snow-storm.  Plaintiffs respond that PATCO has failed to satisfy the two-part test articulated by the New Jersey Supreme Court in <u>Costa v. Josey</u>, 83 N.J. 49 (1980).  In response, PATCO argues this test does not apply to the common law immunity; however, PATCO concedes that it would not be entitled to the "immunity for discretion in carrying out operations, but only for higher level discretionary decisions." (Def. Reply Br. at 14).

This Court recognizes that the undertaking of "a maintenance program might have involved a policy chose as to the allocation of resources as in <u>Amelchenko</u>." <u>Costa</u>, 83 N.J. at

59.  However, at this time the Court cannot conclude the decisions regarding road repair and snow removal suggest the decision to maintain the sewer system is, as a matter of law at the pleading stages, a high-level policy decision that warrants application of the common law immunity.  PATCO simply asserts, in a conclusory fashion, that any decision regarding the maintenance of the sewer system was a high-level policy decision.

Similarly, while this Court acknowledges that in Barney's the New Jersey Supreme Court found the Amelchenko decision persuasive in holding: "whenever, thereafter, serious flooding first appeared, governmental judgment and discretion had to be exercised as to whether or when to remedy it, or how, in terms of priorities of need as between that exigency and others the city faced[,]" Barney's Furniture Warehouse, Inc., 62 N.J. at 469, that inquiry is largely fact driven.  Here, unlike the more developed record in Barney's, this Court considers only the Plaintiff's complaint and thus, the Court declines at this time to decide the application of the discretionary decision immunity regarding maintenance of the drainage inlet on the present record.  It may be that PATCO can provide facts that support the application of the common law discretionary decision immunity.  The Court is unable to make such a determination at this time.  As such, PATCO's Motion to Dismiss as it relates to the

maintenance of the sewage system will be denied.

<b><u>CONCLUSION</u></b>

For the reasons stated above, PATCO's Motion to Dismiss will be denied.  An appropriate Order will be entered.


Date: December 21, 2020          s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.